## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STEVE DOUGLAS GARTIN,

      Plaintiff,

v.                                        No. CIV-06-0350 WPJ/LAM

MARLEEN LANGFIELD,
THOMAS C. MILLER, DENNIS HALL,
GARY CLYMAN, DONALD L. ESTEP,
HON. MARGIE ENQUIST,
HON. JUDY ARCHULETA,
HON. TINA OLSEN, CRISSY
SCHAUDT, STATE OF COLORADO,
1ST JUDICIAL DISTRICT,

      Defendants.

### MEMORANDUM OPINION and ORDER DISMISSING CASE

      This matter comes before the Court on the State of Colorado Defendants' Motion to Dismiss [Doc. 4, filed May 18, 2006]; on Defendant Thomas C. Miller's Motion to Dismiss [Doc. 5, filed May 22, 2006], and on Defendant Dennis Hall's Motion to Dismiss [Doc. 7, filed June 6, 2006].   After carefully considering the parties' briefs, the record, and the relevant law, the Court concludes that the motions are well taken and should be granted.   Additionally, because the Court has no personal jurisdiction over any of the Defendants, the Court will dismiss Plaintiff Steve Douglas Gartin's lawsuit.

### I.  Legal standards

      Defendants assert that the Court does not have personal jurisdiction over them.  Gartin bears the burden of establishing personal jurisdiction over the Defendants, but, in the absence of an evidentiary hearing, he need only make a prima facie showing of such jurisdiction to defeat their motion to dismiss.  *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th

Cir. 1998).  In order to establish personal jurisdiction over the Defendants, Gartin must demonstrate facts meeting two requirements.  *See United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002).  First, he must show that each defendant is "subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." *Id.* (internal quotation marks omitted). Second, "the exercise of personal jurisdiction must not offend the due process clause of the Fourteenth Amendment. " *Id.* (internal quotation marks omitted).

Similarly, New Mexico applies a three-part test to determine whether personal jurisdiction lies over non-residents.  The Court must determine whether:  (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute; (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due process concerns.  *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 48 P.3d 50, 54 (N.M. 2002). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico as far as constitutionally permissible."  *Id.*  Under the Constitution, a defendant must have sufficient "'minimum contacts'" with the forum state such that allowing the action to be brought there will not "'offend traditional notions of fair play and substantial justice.'" *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319-20 (1945)).

> The *International Shoe* "minimum contacts" standard may be met in either of two ways.  Specific jurisdiction-based on a matter occurring in the forum state-exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).  General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state.

*Id.* at 1532-33.  "[T]he defendant's conduct and connection with the forum State [must be] such that

he should reasonably anticipate being haled into court there." *Id.* at 1534 (internal quotation marks omitted).

## II.  Background

For the purposes of deciding the motions to dismiss, the Court has presumed as true the jurisdictional facts alleged in Gartin's Complaint.  The individual Defendants[1], except for Miller (who was Gartin's former attorney in criminal proceedings in Colorado), and Estep (who is a Jefferson County deputy sheriff or investigator), all are employees of the State of Colorado.  *See* Complaint at 1-3.  All Defendants reside in Colorado.  *See id.*  As the complaint shows, the alleged actions that give rise to Gartin's claims all occurred in Colorado.

Specifically, Gartin claims that, while he was living in Colorado in September 2000, Defendants Clyman, Estep, and the Lakewood Colorado SWAT team "menaced [him] with high-caliber, laser-sighted automatic weapons wielded by S.W.A.T. Teams, repeatedly incarcerated [him] on groundless and frivolous contrived charges, threatened him on numerous occasions, and unlawfully threatened, intimidated and imprisoned [his] witnesses."  Complaint at 4, 6.  Gartin alleges that Defendants Hall, Estep, and Clyman conspired to file false criminal charges against him in 2000 because he was a civil plaintiff from 1995-2000 in a case defended by some of the State Defendants. *See id.* at 5-6.  Gartin claims he was held in a prison in California for several weeks and then transported to Jefferson County, Colorado, charged with "unlawful flight to avoid prosecution" and held without arraignment until February 2002.  *See id.*, *id.* at 8.  Certain "bogus charges" were allegedly dismissed in March 2001.  *Id.* at 8.  Although he does not state what he was charged with,

---

[1]  Gartin indicates in the body of his complaint that Marleen M. Langfield is a defendant, but she was inadvertently not named in the style of his complaint.  Langfield joined the other State Defendants in moving for dismissal in lieu of filing an answer; the Court therefore will sua sponte amend the style of the case to correct the omission and include Langfield in its rulings

Gartin admits that he pleaded guilty to a criminal charge and agreed to a "probation agreement" in April 2002.  *Id.* at 9.

Gartin claims that he was arrested in Colorado on a warrant for violating his probation in November 2002, but says that the charges were later dismissed.  *Id.*  He claims that he "successfully discharged the Probation Agreement" in April 2004 and then moved to withdraw his guilty plea.  *Id.* at 9-10.  Gartin sued his attorney, Defendant Miller, in May 2004 in a Colorado state court for breach of contract.  *See id.* at 10.  He claims that Miller then contacted Defendant Clyman to get him to instigate another prosecution against Gartin, and that Clyman complied by filing an affidavit in June 2004 "seeking Gartin's arrest for three felonies."  *Id.*  When Gartin voluntarily appeared in Colorado for a hearing in his breach-of-contract case against Miller, "he was arrested and charged with three felonies."  *Id.*

Gartin claims that he appeared three times in Colorado on the criminal charges before defendant-judges Olsen, Archuleta, and Enquist, but that he was not arraigned until September 2005. *See id.* at 11.  Gartin was released on bond, and represented himself until Judge Enquist required an attorney to be appointed for him in January 2006 as a condition of his bond.  *See id.* at 12.  He claims that Defendants Hall and Miller refused to comply with discovery orders in his criminal trial.  *See id.* Gartin complains that Judge Enquist unfairly forced his newly appointed attorney to "go to trial on 22 February 2006" after denying discovery, and denying her the opportunity to confer with Gartin, to interview witnesses, or to prepare for trial, thereby effectively denying Gartin the right to a speedy trial or to effective assistance of counsel.  *See id.* at 13.  Gartin states that he was found guilty of a felony, but that probation officer Defendant Schaudt prepared a probation report "replete with lies and false statements."  *Id.*  Gartin thus claims that "all named Defendants" thereby "agreed upon a scheme by which to violate [his] Constitutionally secured right to be free from governmental

4

oppression." *Id.* at 14.  He contends that, by engaging in the above-described acts, the Defendants are guilty of violating several state and federal criminal statutes, and of "malicious criminal prosecution." *Id.* at 16-17.

Gartin requests as relief "political asylum in . . . New Mexico," "amnesty by the State of Colorado and all political subdivisions," "complete purging and sealing of all court records" in Colorado where his name appears, and monetary and punitive damages under 42 U.S.C. §§ 1979, 1983, 1985, and 1986, as well as attorney fees and costs under 42 U.S.C. § 1988. *Id.* at 17-18.

### III.  Analysis

**A.  Motions to dismiss for lack of personal jurisdiction over Defendants.**  Gartin's complaint establishes that the Defendants are Colorado residents, that all alleged bad acts occurred in Colorado, and that Defendants have not committed any acts in New Mexico that could subject them either to New Mexico's specific long-arm jurisdiction or to its general jurisdiction.  Nothing in the complaint indicates that the Defendants purposefully directed their activities at New Mexico residents, and nothing supports a conclusion that Gartin's claims arise out of or result from "actions by the defendant himself that create a substantial connection with the forum state." *OMI Holdings, Inc.*, 149 F.3d at 1092 (internal quotation marks omitted).

Gartin's briefs objecting to dismissal are devoid of any reasoned argument, factual or legal, that any of the defendants had sufficient contacts with New Mexico to allow this Court to exercise personal jurisdiction over them.  Factually, he argues only that Defendant Miller, through his attorney's motion for legal fees in the breach-of-contract case instigated by Gartin, "lured" him into the state of Colorado while he was residing in New Mexico so that he could be arrested.  These facts do not suffice to show that Miller purposefully availed himself of the privilege of conducting activities in New Mexico.  Having filed the breach-of-contract suit in Colorado, Gartin voluntarily subjected

5

himself to Colorado's jurisdiction.  Legally, Gartin erroneously asserts that both Colorado and New

Mexico "fall within the 10th District Federal Court's jurisdiction," so New Mexico has jurisdiction

over the Colorado Defendants.  Pl. Resp. to State Def. Mot. to Dismiss at 3.  But there is no "10th

District Federal Court."  Although the Tenth Circuit Court of Appeals has jurisdiction over appeals

from New Mexico and Colorado, the personal jurisdiction of a federal district court is determined on

the basis of each state's physical boundaries.

Gartin cannot meet either of the two requirements to establish personal jurisdiction over the

Defendants in New Mexico.  *See Botefuhr*, 309 F.3d at 1271.  New Mexico simply does not have

specific or general personal jurisdiction over the Defendants, and the Defendants lack the requisite

minimum contacts with New Mexico to satisfy due process.

**B.  Transfer.**  28 U.S.C. § 1631 reads in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want
> of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . .
> . to any other such court in which the action or appeal could have been brought at the
> time it was filed or noticed, and the action or appeal shall proceed as if it had been
> filed in or noticed for the court to which it is transferred on the date upon which it
> was actually filed or noticed for the court from which it is transferred.

The Court assumes that § 1631 requires district courts to consider the merits of transfer before

dismissing a case for lack of jurisdiction.  The factors the Court should consider in deciding whether

a transfer is in the interests of justice include whether the claims would be barred by a statute of

limitations if filed anew in the proper forum, *see, e.g., Haugh v. Booker*, 210 F.3d 1147, 1150 (10th

Cir. 2000), whether the claims alleged are likely to have merit, *see id.*, and whether it was clear at the

time of filing that the court lacked the requisite jurisdiction, *see Trierweiler*, 90 F.3d at 1544 (noting

proposition adopted in other circuits that "it is not in the interest of justice to transfer where a plaintiff

either realized or should have realized that the forum in which he or she filed was improper" because

the forum lacked personal jurisdiction over the defendants).

The Court finds that it would not be in the interests of justice to transfer this case to Colorado.  Congress's intent in promulgating § 1631 was to "protect a plaintiff against either additional expense or the expiration of a relevant statute of limitations in the event that the plaintiff makes an error in trying to select the proper court within the complex federal court system." 17 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4104, at 406 (2d ed.1986) (citing S. Rep.  No. 97-275 (1982)).  Gartin vehemently objects to transferring venue to the Colorado courts, asserting that "[n]o speedy and justicable [sic] remedy lies within Colorado's venue," and contending that "transferring this case to COLORADO would be tantamount to issuing Plaintiff a death-sentence." Pl. Resp. to Colo. State Def. Mot. to Dismiss at 3, 4.  The Court will not force Gartin to prosecute his claims in the Colorado courts, but, "without jurisdiction over the parties [, the Court] cannot render a valid judgment." *OMI Holdings, Inc.*, 149 F.3d at 1090.

**NOW, THEREFORE, IT IS ORDERED** that the State of Colorado Defendants' Motion to Dismiss [Doc. 4] is **GRANTED**; that Thomas C. Miller's Motion to Dismiss [Doc. 5] is **GRANTED**; that Dennis Hall's Motion to Dismiss [Doc. 7] is **GRANTED**, and that Gartin's complaint is **DISMISSED.**

_____
UNITED STATES DISTRICT JUDGE